# In the United States Court of Federal Claims

**No. 22-896C**
**Filed: August 18, 2023**
**Reissued for Publication: September 3, 2023[1]**

```
* * * * * * * * * * * * * * * * *
DONALD POLK and                  *
LETICIA VILLARREAL DE POLK,      *
                                 *
           Plaintiffs,           *
                                 *
     v.                          *
                                 *
UNITED STATES,                   *
                                 *
           Defendant.            *
* * * * * * * * * * * * * * * * *
```

**Ian M. Comisky**, Fox Rothschild, LLP, Philadelphia, PA, for plaintiffs.

**Stefan R. Wolfe**, Trial Attorney, Tax Division, Court of Federal Claims Section, United States Department of Justice, Washington, DC, for defendant. With him were **Jason Bergmann**, Assistant Chief, Court of Federal Claims Section, **David I. Pincus**, Chief, Court of Federal Claims Section, and **David A. Hubbert**, Deputy Assistant Attorney General, Tax Division, United States Department of Justice, Washington, DC.

# O P I N I O N

## HORN, J.

Plaintiffs Donald Polk and Leticia Villarreal de Polk, husband and wife, filed their original complaint in the United States Court of Federal Claims on August 12, 2022, and on August 22, 2022, filed a corrected amended complaint,[2] for a refund of their tax return

---

[1] This Opinion was issued under seal on August 18, 2023. The parties were asked to propose redactions prior to public release of the Opinion. This Opinion is issued without redactions since the parties proposed no redactions in response to the court's request.

[2] The court granted plaintiffs' motion to file an amended complaint because, as plaintiffs' motion explained, "[c]ertain pages of Exhibit B that was [sic] filed with Plaintiffs' complaint

for the tax year 2008. In their prayer for relief, plaintiffs seek "[j]udgment in their favor and against the United States of American [sic] in the amount of at least $196,096.00[3] for the tax period ending December 31, 2008, plus statutory interest on that amount as allowed by law." (alterations and footnote added). Plaintiffs allege that, at the time they "filed the tax returns at issue" in this case, "they resided at Rua Garauna 44, Loteamento Alphaville, Campinas, Sao Paulo, Brazil," and that, at the time of filing their original complaint and amended complaint in this court, plaintiffs resided in Kingston, Ontario, Canada.

## FINDINGS OF FACT

According to plaintiffs' amended complaint, "[o]n or about August 16, 2010, the Internal Revenue Service prepared a substitute income tax return for Plaintiffs for the tax period ending December 31, 2008, pursuant to Internal Revenue Code section 6020(b)."[4] (alteration added). Plaintiffs allege that the "substitute return resulted in an assessment

---

are illegible, evidently due to an issue that arose when those pages were scanned." (capitalization in original; alterations added).

[3] Plaintiffs' complaint and plaintiffs' amended complaint both state at numerous points, including in the cause of action and the prayer for relief, that plaintiffs seek $196,096.00, and that plaintiffs previously sought, and were denied, a refund of $196,096.00 from the IRS. Plaintiffs' complaint and plaintiffs' amended complaint elsewhere both state, however, that plaintiffs sought a refund of $196,690.00 from the IRS, and plaintiffs' Form 1040X amended tax return for tax year 2008, attached to plaintiffs' amended complaint filed in this court, also records the amount of the refund sought by plaintiffs as $196,690.00. Plaintiffs do not explain the discrepancy between the two amounts, $196,096.00 and $196,690.00, alleged for the same tax refund claim as pleaded in their amended complaint.

[4] The statute at 26 U.S.C. § 6020(b), cited by plaintiffs in their amended complaint, as noted above, provides:

**(b) Execution of return by Secretary.--**

**(1) Authority of Secretary to execute return.--**If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.

**(2) Status of returns.--**Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes.

26 U.S.C. § 6020(b) (2018) (emphasis in original).

of taxes in the amount of $156,796.00, as well as late filing and payment penalties and interest." Plaintiffs further allege:

> 11. On or about October 22, 2012, the Internal Revenue Service applied a payment from Plaintiffs in the amount of $217,720.21 to Plaintiffs' Form 1040 account for the tax period ending December 31, 2008.

> 12. On or about January 4, 2013, the Internal Revenue Service applied a payment from Plaintiffs in the amount of $398.35 to Plaintiffs' Form 1040 account for the tax period ending December 31, 2008.

Plaintiffs' amended complaint continues that "[o]n or about April 12, 2018, Plaintiffs filed a Form 1040 individual income tax return for the tax period ending December 31, 2008." (alteration added). Plaintiffs allege that "Plaintiffs' Form 1040 tax return claimed a foreign tax credit on line 47 in the amount of $37,170.00[.]" (alteration added). Plaintiffs further allege that their "Form 1040 tax return inadvertently failed to reflect Plaintiffs' prior payments of $217,720.21 and $398.35," and that their "Form 1040 tax return reflected a balance due of $22,022.00[.]"[5] (alteration added).

According to plaintiffs' amended complaint, subsequently, "[o]n or about February 11, 2019, Plaintiffs filed a Form 1040X amended income tax return for 2008." Plaintiffs allege:

> 18. Plaintiffs' Form 1040X amended tax return claimed a foreign tax credit on line 47 in the amount of $37,170.00.

> 19. Plaintiffs' Form 1040X amended tax return reflected their prior payments of $217,720.21 and $398.35 on line 63.

> 20. Plaintiffs' Form 1040X amended tax return reflected a refund due of $196,690.00.

> 21. Plaintiffs' claim for refund in the amount of $196,690.00 for the tax period ending December 31, 2008, was timely filed pursuant to Internal Revenue Code section 6511(d)(3).[6]

---

[5] Plaintiffs' Form 1040 for tax year 2008, included as an exhibit to plaintiffs' amended complaint, filed on April 12, 2018, after listing plaintiffs' claimed foreign tax credit of $37,170.00 at line 47, indicates at line 67 that plaintiffs had a "**total tax**" of $47,879.00, from which plaintiffs subtracted $26,451.00 in "**total payments**," line 71, and to which plaintiffs added an "[e]stimated tax penalty" of $594.00, line 76, for a total amount owed of $22,022.00. (emphasis in original; alteration added).

[6] Plaintiffs' Form 1040X for tax year 2008, included as an exhibit to plaintiffs' amended complaint, filed on February 11, 2019, after listing plaintiffs' claimed foreign tax credit of $37,170.00 at line 7, indicates at line 10 that plaintiffs had a "[t]otal tax" of $47,879.00, from which plaintiffs subtracted $244,569.00 in "[t]otal payments," line 18, which was due to the addition of "[e]stimated tax payments" of $218,118.00, line 12, and "Federal income

(footnote added). According to plaintiffs' amended complaint, "[o]n or about May 27, 2019, the Internal Revenue Service mailed Notice CP21B to Plaintiffs." (alteration added). Plaintiffs allege that "Notice CP21B stated that 'you are due a refund' in the amount of $182,481.89 for the tax period ending December 31, 2008" and "that '[w]e made the changes you requested to your 2008 Form 1040A to adjust your: • account information • filing status to married filing joint return • penalty charge.'" (alteration in original). According to plaintiffs, "[o]n or about August 28, 2020, the Internal Revenue Service mailed Letter 105C to Plaintiffs," which "stated that the Internal Revenue Service 'disallowed your claim for credit for the tax period listed at the top of this letter.'"[7] (alteration added). According to plaintiffs' amended complaint, the 105C Letter stated, under "WHY WE CAN'T ALLOW YOUR CLAIM," (capitalization in original), "that '[y]ou filed your original tax return more than 3 years after you paid the tax.'" (alteration in original).

**Procedural History**

As noted above, on August 22, 2022, plaintiffs filed their corrected, amended complaint in this court, which set forth one cause of action, "**Claim for Refund - $196,096.00 for the Tax Period Ending December 31, 2008**." (capitalization and emphasis in original). In the cause of action in their amended complaint before this court, plaintiffs allege:

30. Plaintiffs' Form 1040X individual income tax return for the period ending December 31, 2008, sought a refund in the amount of $196,096.00 plus statutory interest.

31. Plaintiffs' Form 1040X individual income tax return sought a foreign tax credit on line 47 in the amount of $37,170.00.

32. Plaintiffs' Form 1040X individual income tax return for the tax period ending December 31, 2008, was timely filed pursuant to Internal Revenue Service section 6511(d)(3).

33. The Internal Revenue Service acknowledged in Notice CP21B dated May 19, 2019, that Plaintiffs were entitled to a refund for the tax period ending December 31, 2008.

---

tax withheld and excess social security and tier one RRTA [Railroad Retirement Tax Act] withheld" of $26,451.00, line 11. (alterations added). Plaintiffs' Form 1040X for tax year 2008 records a refund due to plaintiffs of $196,690.00.

[7] The "claim for credit for the tax period listed at the top of this letter" stated in the August 28, 2020 Letter 105C is $182,481.89, the amount stated by the IRS in the May 27, 2019 Notice CP21B, rather than the $196,690.00 claimed as a refund by plaintiffs' Form 1040X for tax year 2008.

> 34. The Internal Revenue Service nonetheless improperly disallowed Plaintiffs' claim for refund as set forth on their Form 1040X amended income tax return for the tax period ending December 31, 2008."

(internal references omitted). Moreover, plaintiffs' amended complaint alleges that "Plaintiffs timely protested the disallowance of their [entire] refund claim for the tax period ending December 31, 2008." (alteration added). In response to the amended complaint, defendant filed a partial motion to dismiss "$159,520 of the amount claimed by plaintiffs" for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) (2021).[8] If granted, defendant's partial motion to dismiss would leave $37,170.00 of plaintiffs' claim for refund at issue in the case. Defendant's partial motion to dismiss states:

> Plaintiffs seek a refund of $196,960 [sic] for their 2008 income tax year. Of the amount at issue, $37,170 is based on an alleged entitlement to foreign tax credits; the balance is not. Plaintiffs' claim based on foreign tax credits was timely, being subject to the ten-year statute of limitations under I.R.C. § 6511(d)(3). But plaintiffs' claim for the remaining $159,520 was governed by the shorter limitations period under § 6511(a).

(alteration added; internal references and footnote omitted). Defendant argues in its partial motion to dismiss that, regarding that part of plaintiffs' claim which is not based on an alleged foreign tax credit, "because plaintiffs' administrative refund claim was filed almost six years after they made their last tax payment of 2008, the claim was untimely [with respect to the $159,520.00 not attributable to a claimed foreign tax credit], and the Court lacks subject matter jurisdiction over it." (alteration added). Defendant's partial motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction has been fully briefed and oral argument was held.

## DISCUSSION

As explained above, defendant has moved to dismiss $159,520.00 of plaintiffs' tax refund claim on the basis that the court lacks jurisdiction over that portion of plaintiffs' claim. "Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); see also Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); St. Bernard Parish Gov't v. United States, 916 F.3d 987, 992–93 (Fed. Cir. 2019) ("[T]he court must address jurisdictional issues, even

---

[8] Defendant's partial motion to dismiss acknowledges that "plaintiffs refer to the amount at issue as both $196,690 and $196,096," and states that "[b]ecause the former number appears in plaintiffs' administrative refund claim, defendant believes that is the number plaintiffs intended." (emphasis in original; alteration added). Defendant, however, also misstates plaintiffs' claimed refund amount as "196,960" at one point in the partial motion to dismiss.

<u>sua</u> <u>sponte</u>, whenever those issues come to the court's attention, whether raised by a party or not, and even if the parties affirmatively urge the court to exercise jurisdiction over the case." (citing <u>Foster v. Chatman</u>, 578 U.S. 488, 496 (2016)); <u>Rick's Mushroom Serv. v. United States</u>, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise <u>sua</u> <u>sponte</u>, subject matter jurisdiction at any time." (alteration added)); <u>Int'l Elec. Tech. Corp. v. Hughes Aircraft Co.</u>, 476 F.3d 1329, 1330 (Fed. Cir. 2007); <u>Haddad v. United States</u>, 152 Fed. Cl. 1, 16 (2021); <u>Fanelli v. United States</u>, 146 Fed. Cl. 462, 466 (2020). The Tucker Act, 28 U.S.C. § 1491 (2018), grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. <u>See</u> <u>United States v. Navajo Nation</u>, 556 U.S. 287, 289–90 (2009); <u>see</u> <u>also</u> <u>Me. Community Health Options v. United States</u>, 140 S. Ct. 1308, 1327–28 (2020); <u>United States v. Mitchell</u>, 463 U.S. 206, 216 (1983); <u>Sanford Health Plan v. United States</u>, 969 F.3d 1370, 1378 (Fed. Cir. 2020) ("[T]he Tucker Act gives the Court of Federal Claims jurisdiction, and waives the sovereign immunity of the United States, for money claims 'against the United States founded [upon] . . . any Act of Congress.'" (ellipsis in original; first alteration added) (quoting 28 U.S.C. § 1491(a)(1))); <u>Boeing Co. v. United States</u>, 968 F.3d 1371, 1382 (Fed. Cir. 2020) ("Case law involving the Tucker Act, 28 U.S.C. § 1491(a), has long distinguished three types of claims against the federal government: contractual claims, illegal-exaction claims, and money-mandating-statute claims."); <u>N.Y. & Presbyterian Hosp. v. United States</u>, 881 F.3d 877, 881 (Fed. Cir. 2018); <u>Alpine PCS, Inc. v. United States</u>, 878 F.3d 1086, 1092 (Fed. Cir.), <u>cert.</u> <u>denied</u>, 139 S. Ct. 78 (2018); <u>Alvarado Hosp., LLC v. Price</u>, 868 F.3d 983, 991 (Fed. Cir. 2017); <u>Higbie v. United States</u>, 778 F.3d 990, 993 (Fed. Cir.), <u>cert.</u> <u>denied</u>, 577 U.S. 816 (2015); <u>Cunningham v. United States</u>, 748 F.3d 1172, 1175–76 (Fed. Cir. 2014); <u>Holmes v. United States</u>, 657 F.3d 1303, 1309 (Fed. Cir. 2011); <u>Greenlee Cnty., Ariz. v. United States</u>, 487 F.3d 871, 875 (Fed. Cir.), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2007), <u>cert.</u> <u>denied</u>, 552 U.S. 1142 (2008); <u>Cyprus Amax Coal Co. v. United States</u>, 205 F.3d 1369, 1373 (Fed. Cir.), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2000), <u>cert.</u> <u>denied</u>, 532 U.S. 1065 (2001); <u>Palmer v. United States</u>, 168 F.3d 1310, 1314 (Fed. Cir. 1999); <u>Montero v. United States</u>, 162 Fed. Cl. 29, 34 (2022); <u>Richardson v. United States</u>, 157 Fed. Cl. 342, 353 (2021); <u>Gulley v. United States</u>, 150 Fed. Cl. 405, 411 (2020); <u>Kuntz v. United States</u>, 141 Fed. Cl. 713, 717 (2019).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any

defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983)), reh'g denied (Fed. Cir. 1997); see also Starrett v. United States, 158 Fed. Cl. 487, 492 (2022) (quoting Holley v. United States, 124 F.3d at 1465); Baha v. United States, 123 Fed. Cl. 1, 4 (2015); Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2023); Fed. R. Civ. P. 8(a)(1), (2) (2023); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998) (alteration added); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014); see also 6601 Dorchester Inv. Grp., LLC v. United States, 154 Fed. Cl. 685, 692 (2021); Hale v. United States, 143 Fed. Cl. 180, 190 (2019). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (first alteration added) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

The United States Supreme Court has stated that: "A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court or in the United States Court of Federal Claims." United States v. Clintwood Elkhorn Min. Co., 553 U.S. 1, 4 (2008) (citing 28 U.S.C. § 1346(a)(1); EC Term of Years Trust v. United States, 550 U.S. 429, 431, and n.2 (2007)); see also Walby v. United States, 957 F.3d 1295, 1298 (Fed. Cir. 2020) ("Congress has waived sovereign immunity over tax refund suits pursuant to 28 U.S.C. § 1346(a)(1), which provides the Claims Court (and district courts) with the authority to hear '[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected.'" (quoting 28 U.S.C. § 1346(a)(1))); Stephens v. United States, 884 F.3d 1151, 1156 (Fed. Cir. 2018); Koopmann v. United States, 151 Fed. Cl. 798, 804 (2021); Shnier v. United States, 151 Fed. Cl. 1, 8 (2020); Shields v. United States, 136 Fed. Cl. 37, 44 (2018); Fremuth v. United States, 129 Fed. Cl. 684, 688 (2016).

Section 1346 of Title 28 of the United States Code provides that:

(a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

> (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws . . . .

28 U.S.C. § 1346(a)(1) (2018).

For this court to exercise its jurisdiction over plaintiffs' federal tax refund claim, plaintiffs must first satisfy the tax refund schematic detailed in Title 26 of the Internal Revenue Code, which establishes that a claim for refund must be filed with the IRS before filing suit in federal court and establishes strict deadlines for filing such claims. See 26 U.S.C. §§ 6511, 7422 (2018);[9] see also Taha v. United States, 28 F.4th 233, 237 (Fed. Cir. 2022) ("A taxpayer can bring a tax refund action against the government only after filing a timely refund claim with the IRS." (citing 26 U.S.C. § 7422(a); United States v. Clintwood Elkhorn Min. Co., 553 U.S. at 4-5)); Stephens v. United States, 884 F.3d at 1156 ("The Tucker Act waives sovereign immunity for lawsuits seeking tax refunds, but only when the jurisdictional requirements in the Tax Code for bringing such suits are met."). In United States v. Clintwood Elkhorn Mining Co., the United States Supreme Court indicated that:

> A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court or in the United States Court of Federal Claims. The Internal Revenue Code specifies that before doing so, the taxpayer must comply with the tax refund scheme established in the Code. That scheme provides that a claim for a refund must be filed with the Internal Revenue Service (IRS) before suit can be brought, and establishes strict timeframes for filing such a claim.

United States v. Clintwood Elkhorn Min. Co., 553 U.S. at 4 (citations omitted); see also United States v. Dalm, 494 U.S. 596, 609-10, reh'g denied, 495 U.S. 941 (1990); Dixon v. United States, 67 F.4th 1156, 1160 (Fed. Cir. 2023) (quoting 26 U.S.C. § 7422(a)); General Mills, Inc. v. United States, 957 F.3d 1275, 1283 (Fed. Cir. 2020) (citing 26 U.S.C. § 7422(a); United States v. Clintwood Elkhorn Min. Co., 553 U.S. at 5); N.Y. &

---

[9] The statute at 26 U.S.C. § 7422(a) states:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a).

Presbyterian Hosp. v. United States, 881 F.3d at 887 (quoting United States v. Clintwood Elkhorn Min. Co., 553 U.S. at 7); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009) ("[I]n the context of tax refund suits, the [Supreme] Court has held that the Court of Federal Claims's Tucker Act jurisdiction is limited by the Internal Revenue Code, including 26 U.S.C. § 7422(a)." (alterations added)); Byrne v. United States, 127 Fed. Cl. 284, 290 (2016); Blue v. United States, 108 Fed. Cl. 61, 65 (2012).

The United States Court of Appeals for the Federal Circuit has previously held that section 7422(a) functions as a waiver of the government's sovereign immunity in tax refund suits. Chicago Milwaukee Corp. v. United States, 40 F.3d 373, 374 (Fed. Cir. 1994), reh'g and reh'g en banc denied, 141 F.3d 1112 (Fed. Cir.), cert. denied, 525 U.S. 932 (1998); see also Walby v. United States, 957 F.3d at 1298; Diversified Grp. Inc. v. United States, 841 F.3d 975, 980–81 (Fed. Cir. 2016); Johnson v. United States, 127 Fed. Cl. 529, 535, recons. denied, 127 Fed. Cl. 661 (2016); Claybrook v. United States, 104 Fed. Cl. 680, 690 (2012); Gluck v. United States, 84 Fed. Cl. 609, 613 (2008). In United States v. Dalm, the Supreme Court held that the requirement to file a tax refund with the IRS was jurisdictional. See United States v. Dalm, 494 U.S. at 609-10. The Federal Circuit, in its recent decision in Brown v. United States, 22 F.4th 1008 (2022), however, interpreted that in Dalm, the Supreme Court had "reasoned that filing for a tax refund within the time limits of the statute of limitations was jurisdictional," but "the adequacy of the filing, at issue here, is different from the fact of filing." Brown v. United States, 22 F.4th at 1011. The Federal Circuit in Brown explained that "this court has held that a taxpayer's failure to comply with other § 7422(a) requirements (including those implemented by regulation) generally is jurisdictional," Brown v. United States, 22 F.4th at 1011 (citing Stephens v. United States, 884 F.3d at 1156; Waltner v. United States, 679 F.3d 1329, 1333 (Fed. Cir. 2012)), however,

> that jurisdictional characterization cannot be reconciled with the Supreme Court's decision in Lexmark International, Inc. v. Static Control Components, Inc., where the Court clarified that so-called "statutory standing" defects—i.e., whether a party can sue under a given statute—do not implicate a court's subject matter jurisdiction.

Brown v. United States, 22 F.4th at 1011 (citing Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 and n.4 (2014)).

The Supreme Court in Santos-Zacaria v. Garland, 598 U.S. 411, 143 S. Ct. 1103 (2023), elaborated on the distinction between jurisdictional and nonjurisdictional rules:

> We treat a rule as jurisdictional "only if Congress 'clearly states' that it is." Boechler[, P.C. v. Comm'r], 596 U.S.[ ----,] ----, 142 S. Ct. [1493,] 1497 [(2022)] (quoting Arbaugh v. Y&H Corp., 546 U.S. 500, 515, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006)). And "[w]here multiple plausible interpretations exist—only one of which is jurisdictional—it is difficult to make the case that the jurisdictional reading is clear." [Boechler v. Comm'r,] 596 U.S., at ----, 142 S. Ct., at 1498. We adopted this clear-statement principle in Arbaugh "to leave the ball in Congress' court," ensuring that courts impose harsh jurisdictional consequences only when Congress unmistakably has so instructed. [Arbaugh v. Y&H Corp.,] 546 U.S. at 515-

516, 126 S. Ct. 1235; see Wilkins v. United States, 598 U.S. 152, 157-158, 143 S. Ct. 870, 215 L. Ed. 2d 116 (2023).

Santos-Zacaria v. Garland, 143 S. Ct. at 1112 (fifth alteration in original); see also id. (explaining, with respect to a statutory exhaustion requirement, that "[w]e routinely 'trea[t] as nonjurisdictional . . . threshold requirements that claimants must complete, or exhaust, before filing a lawsuit'" (second alteration and ellipsis in original) (quoting Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 166 and n.6 (2010))). The Supreme Court also stated in Boechler, P.C. v. Commissioner, "Congress need not 'incant magic words'" to make a requirement jurisdictional, Boechler, P.C. v. Comm'r, 142 S. Ct. at 1497 (quoting Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 153 (2013)), "but the 'traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences[.]'" Id. (quoting United States v. Kwai Fun Wong, 575 U.S. 402, 410 (2015) (alteration added)).

A Judge of the United States Court of Federal Claims has held that "section 7422(a) creates a jurisdictional prerequisite to filing a refund suit." Gluck v. United States, 84 Fed. Cl. at 613 (alteration added) (citing Chicago Milwaukee Corp. v. United States, 40 F.3d at 374 (citing Burlington N., Inc. v. United States, 231 Ct. Cl. 222, 684 F.2d 866, 868 (1982))). Once a party has established compliance with 26 U.S.C. § 7422(a), the party may, if successful, also recover interest for its refund claim. See Bank of Am. Corp. v. United States, 964 F.3d 1099, 1103 (Fed. Cir. 2020) (quoting 28 U.S.C. § 1346(a)(1)); Paresky v. United States, 139 Fed. Cl. 196, 205 (2018); Hill v. United States, 118 Fed. Cl. 373, 383 (2014); Deutsche Bank AG v. United States, 95 Fed. Cl. 423, 427 n.3 (2010) ("There is no question, however, that this court has subject matter jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (2006), over claims, such as the present one, seeking to recover statutory interest on income tax refunds." (citing Brown & Williamson, Ltd. v. United States, 231 Ct. Cl. 413, 688 F.2d 747, 752 (1982))), aff'd, 742 F.3d 1378 (Fed. Cir. 2014).

Furthermore, in order for a tax refund case to be duly filed in a federal court pursuant to 26 U.S.C. § 7422(a), the filing must comply with the timing requirements set forth in 26 U.S.C. § 6511(a):

> The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress. A necessary corollary of this rule is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied. When waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity.

Block v. North Dakota ex rel. Bd. of Univ. and School Lands, 461 U.S. 273, 287 (1983) (citations omitted); see also United States v. Dalm, 494 U.S. at 608. The applicable language of section 6511 states in relevant part:

> **(a) Period of limitation on filing claim.--**Claim for credit or refund of an overpayment of any tax imposed by this title . . . shall be filed by the

taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. . . .

**(b) Limitation on allowance of credits and refunds.--**

**(1) Filing of claim within prescribed period.--**No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.

**(2) Limit on amount of credit or refund.--**

**(A) Limit where claim filed within 3-year period.--**If the claim was filed by the taxpayer during the 3-year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return. If the tax was required to be paid by means of a stamp, the amount of the credit or refund shall not exceed the portion of the tax paid within the 3 years immediately preceding the filing of the claim.

**(B) Limit where claim not filed within 3-year period.--**If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim.

26 U.S.C. § 6511(a)–(b) (emphasis in original; ellipses added); see also 26 C.F.R. § 301.6511(a)-1(a)(1) (2022) ("If a return is filed, a claim for credit or refund of an overpayment must be filed by the taxpayer within 3 years from the time the return was filed or within 2 years from the time the tax was paid, whichever of such periods expires the later.").

The statute at 26 U.S.C. § 6511 further provides an extended period of limitations to file a claim for credit or refunds which are attributable to foreign tax credits:

**(d)(3) Special rules relating to foreign tax credit.--**

**(A) Special period of limitation with respect to foreign taxes paid or accrued.**--If the claim for credit or refund relates to an overpayment attributable to any taxes paid or accrued to any foreign country or to any possession of the United States for which credit is allowed against the tax imposed by subtitle A in accordance with the provisions of section 901 or the provisions of any treaty to which the United States is a party,

11

> in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be 10 years from the date prescribed by law for filing the return for the year in which such taxes were actually paid or accrued.

26 U.S.C. § 6511(d)(3)(A) (emphasis in original); see also 26 C.F.R. § 301.6511(d)-3(a) ("In the case of an overpayment of income tax resulting from a credit, allowed under the provisions of [26 U.S.C.] section 901 or under the provisions of any treaty to which the United States is a party, for taxes paid or accrued to a foreign country or possession of the United States, a claim for credit or refund must be filed by the taxpayer within 10 years from the last date prescribed for filing the return (determined without regard to any extension of time for filing such return) for the taxable year with respect to which the claim is made. Such 10–year period shall be applied in lieu of the 3–year period prescribed in section 6511(a)." (alteration added)). A claim for refund "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." 26 C.F.R. § 301.6402-2(b)(1) (2022).

As articulated by the United States Supreme Court in Commissioner v. Lundy, 516 U.S. 235 (1996):

> A taxpayer seeking a refund of overpaid taxes ordinarily must file a timely claim for a refund with the IRS under 26 U.S.C. § 6511. That section contains two separate provisions for determining the timeliness of a refund claim. It first establishes a *filing deadline*: The taxpayer must file a claim for a refund "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid." [26 U.S.C.] § 6511(b)(1) (incorporating by reference [26 U.S.C.] § 6511(a)). It also defines two *"look-back" periods*: If the claim is filed "within 3 years from the time the return was filed," ibid., then the taxpayer is entitled to a refund of "the portion of the tax paid within the 3 years immediately preceding the filing of the claim." [26 U.S.C.] § 6511(b)(2)(A) (incorporating by reference [26 U.S.C.] § 6511(a)). If the claim is not filed within that 3-year period, then the taxpayer is entitled to a refund of only that "portion of the tax paid during the 2 years immediately preceding the filing of the claim." [26 U.S.C.] § 6511(b)(2)(B) (incorporating by reference [26 U.S.C.] § 6511(a)).

Comm'r v. Lundy, 516 U.S. at 239–40 (emphases in original; footnote omitted; alterations added); see also United States v. Clintwood Elkhorn Min. Co., 553 U.S. at 8 (determining that the language of section 6511(a) clearly states that taxpayers "must comply with the Code's refund scheme before bringing suit, including the requirement to file a timely administrative claim."); Dixon v. United States, 67 F.4th at 1159; Taha v. United States, 28 F.4th at 237; All Stacked Up Masonry, Inc. v. United States, 150 Fed. Cl. 540, 551 (2020); Estate of Rubinstein v. United States. 119 Fed. Cl. 658, 667–68 (2015), aff'd, 654 F. App'x 481 (Fed. Cir. 2016). The Supreme Court in Lundy also noted that a timely filing was a prerequisite for the United States Court of Federal Claims to have jurisdiction for a refund claim. See Comm'r v. Lundy, 516 U.S. at 240.

In sum, Congress has provided strict statutory guidelines laying out the statute of limitations for the filing of a federal tax refund claim:

> Read together, the import of these sections is clear: unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been "erroneously," "illegally," or "wrongfully collected," §§ 1346(a)(1), 7422(a), may not be maintained in any court.

United States v. Dalm, 494 U.S. at 602.


## Application of 26 U.S.C. § 6511(d)(3)

The court first addresses whether the 10-year limitations period applies to plaintiffs' entire tax refund claim, or only to $37,170.00 of plaintiffs' claim. Defendant argues that, although $37,170.00 of plaintiffs' tax refund claim "is based on an alleged entitlement to foreign tax credits" and subject to the 10-year limitations period prescribed by 26 U.S.C. § 6511(d)(3), "plaintiffs' claim for the remaining $159,520 was governed by the shorter limitations period under § 6511(a)." Plaintiffs respond that that the 10-year limitations period of 26 U.S.C. § 6511(d)(3) applies to the entire amount of plaintiffs' tax refund claim.

In a statutory interpretation analysis, "[t]he first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 450 (2002) (alteration added) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997); see also Republic of Sudan v. Harrison, 139 S. Ct. 1048, 1056 (2019) (quoting Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S, 566 U.S. 399, 412 (2012) ("We begin 'where all such inquiries must begin: with the language of the statute itself.'" (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989)))); Jimenez v. Quarterman, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute.").

"When tasked with interpreting a statute, we start by exhausting all traditional tools of interpretation to determine its meaning. The starting point is the text itself." Obsidian Sols. Grp., LLC v. United States, 54 F.4th 1371, 1374 (Fed. Cir. 2022) (citing United States v. Hohri, 482 U.S. 64, 69 (1987); see also LaBonte v. United States, 43 F.4th 1357, 1367–68 (Fed. Cir. 2022) ("We begin our analysis, as we must, with the pertinent statutory language."); Nicely v. United States, 23 F.4th 1364, 1368 (Fed. Cir. 2022) ("When interpreting a statute, we 'begin with the language employed by Congress.'" (quoting Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist., 541 U.S. 246, 252 (2004)); Wright v. Sec'y of Health and Human Servs., 22 F.4th 999, 1004 (Fed. Cir. 2022) ("The 'starting point' in statutory construction 'is the language of the statute'—not a single sentence or word of the statute, but rather the 'provisions of the whole law,' its object, and its policy." (quoting Dole v. United Steelworkers of Am., 494 U.S. 26, 35 (1990))); AD Global Fund, LLC ex rel. North Hills Holding, Inc. v. United States, 481 F.3d 1351, 1353 (Fed. Cir. 2007) ("'The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" (quoting

Barnhart v. Sigmon Coal Co., Inc., 534 U.S. at 450)); Starry Assocs., Inc. v. United States, 892 F.3d 1372, 1377 (Fed. Cir. 2018); PDS Consultants, Inc. v. United States, 907 F.3d 1345, 1357 (Fed. Cir. 2018); Bettcher Indus., Inc. v. Bunzl USA, Inc., 661 F.3d 629, 644 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2011); Strategic Hous. Fin. Corp. of Travis Cnty. v. United States, 608 F.3d 1317, 1323 (Fed. Cir. 2010) ("When interpreting any statute, we look first to the statutory language."), reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 562 U.S. 1221 (2011). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. at 341 (citing Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 477 (1992); McCarthy v. Bronson, 500 U.S. 136, 139 (1991)); see also King v. Burwell, 576 U.S. 473, 486 (2015) ("[W]hen deciding whether the language is plain, we must read the words 'in their context and with a view to their place in the overall statutory scheme.'" (quoting Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. at 133)). In construing a statute, courts "'must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose[.]'" Schindler Elevator Corp. v. United States, 563 U.S. 401, 407 (2011) (alteration added) (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175 (2009) (internal quotation marks omitted)). Even "'[w]hen terms used in a statute are undefined, we give them their ordinary meaning[.]'" Id. (alterations added) (quoting Asgrow Seed Co. v. Winterboer, 513 U.S. 179, 187 (1995)); see also Unicolors, Inc. v. H&M Hennes & Mauritz, L.P., 142 S. Ct. 941 (2022) (using the ordinary or commonplace definition of "knowledge" to interpret statutory text); Wolfe v. McDonough, 28 F.4th 1348, 1354 (Fed. Cir. 2022) ("It is a 'fundamental canon of statutory construction' that 'unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning[] . . . at the time Congress enacted the statute.'" (alteration and ellipsis in original) (quoting Perrin v. United States, 444 U.S. 37, 42 (1979)). "[W]e consider each question [of statutory interpretation] in the context of the entire statute." Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S, 566 U.S. at 412 (alterations added) (citing Robinson v. Shell Oil Co., 519 U.S. at 341; Roberts v. Sea-Land Servs., Inc., 566 U.S. 93, 100 (2012); Bush v. United States, 655 F.3d 1323, 1329 (Fed. Cir. 2011), cert. denied, 566 U.S. 1021 (2012).

The initial inquiry into the statutory text ceases "'if the statutory language is unambiguous and "the statutory scheme is coherent and consistent."'" Barnhart v. Sigmon Coal Co., 534 U.S. at 450 (quoting Robinson v. Shell Oil Co., 519 U.S. at 340 (quoting United States v. Ron Pair Enters., Inc., 489 U.S. at 240); see also King v. Burwell, 576 U.S. at 474 ("If the statutory language is plain, we must enforce it according to its terms.") (citing Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 251 (2010)); Sucic v. Wilkie, 921 F.3d 1095, 1098 (Fed. Cir. 2019) (quoting Barnhart v. Sigmon Coal Co., 534 U.S. at 450); Bettcher Indus., Inc. v. Bunzl USA, Inc., 661 F.3d at 644; Arko Foods Int'l, Inc. v. United States, 654 F.3d 1361, 1364 (Fed. Cir. 2011) ("'[W]here Congress has clearly stated its intent in the language of a statute, a court should not inquire further into the meaning of the statute.'" (alteration in original) (quoting Millenium Lumber Distrib. Ltd. v. United States, 558 F.3d 1326, 1328 (Fed. Cir.), reh'g denied (Fed. Cir. 2009)); Am. Airlines, Inc. v. United States, 551 F.3d 1294, 1300 (Fed. Cir. 2008). Thus, when the "'statute's language is plain, "the sole function of the courts is to enforce it according to

its terms[.]"'" Johnson v. United States, 529 U.S. 694, 723 (2000) (Scalia, J., dissenting) (quoting United States v. Ron Pair Enters., Inc., 489 U.S. at 241 (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917))); see also Jimenez v. Quarterman, 555 U.S. at 118; Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)); Bartels Trust for the Benefit of Cornell Univ. ex rel. Bartels v. United States, 617 F.3d 1357, 1361 (Fed. Cir. 2010) (citing Sharp v. United States, 580 F.3d 1234, 1237 (Fed. Cir. 2009)); Candle Corp. of Am. v. U.S. Int'l Trade Comm'n, 374 F.3d 1087, 1093 (Fed. Cir.), reh'g and reh'g denied (Fed. Cir. 2004).

When interpreting the plain meaning of the statute, it is the court's duty, if possible, to give meaning to every clause and word of the statute. See Setser v. United States, 566 U.S. 231, 239 (2012) ("Our decision today follows the interpretive rule they invoke, that we must 'give effect . . . to every clause and word' of the Act." (ellipsis in original) (quoting United States v. Menasche, 348 U.S. 528, 538–39 (1955))); see also Alaska Dep't of Env't Conservation v. EPA, 540 U.S. 461, 489 n.13 (2004) ("It is, moreover, a 'cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (internal quotations omitted))); Williams v. Taylor, 529 U.S. 362, 404 (2000) (describing as a "cardinal principle of statutory construction" the rule that every clause and word of a statute must be given effect if possible; Wolfe v. McDonough, 28 F.4th at 1354–55 ("The presumption against surplusage additionally provides that a 'statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'") (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004) (citing 2A Norman J. Singer, Statutes and Statutory Construction § 46.06, at 18186 (rev. 6th ed. 2000))); Boeing Co. v. Sec'y of the Air Force, 983 F.3d 1321, 1327 (Fed. Cir. 2020) (quoting Shea v. United States, 976 F.3d 1292, 1300 (Fed. Cir. 2020) ("[I]t is a 'cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute[.]'" (alterations added) (quoting Williams v. Taylor, 529 U.S. at 364))); Sharp v. United States, 580 F.3d at 1238. Similarly, the court must avoid an interpretation of a clause or word which renders other provisions of the statute inconsistent, meaningless, or superfluous. See Duncan v. Walker, 533 U.S. 167, 174 (2001) (noting that courts should not treat statutory terms as "surplusage"). The Federal Circuit has stated that "[w]e do not look at the text in a vacuum, but rather, we must consider the words 'in their context and with a view to their place in the overall statutory scheme.'" Obsidian Sols. Grp., LLC v. United States, 54 F.4th at 1374 (quoting King v. Burwell, 576 U.S. at 486) (alteration added). "[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." Morton v. Mancari, 417 U.S. 535, 551 (1974) (alteration added); see also Radzanower v. Touche Ross & Co., 426 U.S. 148, 155 (1976) (quoting Morton v. Mancari, 417 U.S. at 551); Abrantes v. United States, 54 F.4th 1332, 1337 (Fed. Cir. 2022) ("'[W]here two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" (alteration in original) (quoting Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1018 (1984)); Xianli Zhang v. United States, 640 F.3d 1358, 1368 (Fed. Cir.) (citing Cathedral Candle Co. v. U.S. Int'l Trade Comm'n, 400 F.3d 1352, 1365 (Fed. Cir. 2005)), reh'g and reh'g

<u>en</u> <u>banc</u> <u>denied</u> (Fed. Cir. 2011), <u>cert.</u> <u>denied</u>, 566 U.S. 986 (2012); <u>Hanlin v. United</u> <u>States</u>, 214 F.3d 1319, 1321 (Fed. Cir.), <u>reh'g</u> <u>denied</u> (Fed. Cir. 2000).

The United States Supreme Court also has held that the specific terms of a statute supersede general terms within that statute or within another statute that might otherwise control. <u>See</u> <u>Fourco Glass Co. v. Transmirra Prods. Corp.</u>, 353 U.S. 222, 228–29 (1957) ("Specific terms prevail over the general in the same or another statute which otherwise might be controlling.") (quoting <u>D. Ginsberg & Sons v. Popkin</u>, 285 U.S. 204, 208 (1932))); <u>see also</u> <u>Bloate v. United States</u>, 559 U.S. 196, 207 (2010); <u>Bulova Watch Co. v. United</u> <u>States</u>, 365 U.S. 753, 761 (1961). In addition, the Supreme Court has endorsed "the 'normal rule of statutory construction' that 'identical words used in different parts of the same act are intended to have the same meaning.'" <u>Gustafson v. Alloyd Co., Inc.</u>, 513 U.S. 561, 570 (1995) (quoting <u>Dep't of Revenue of Or. v. ACF Indus., Inc.</u>, 510 U.S. 332, 342 (1994)); <u>see also</u> <u>Kislev Partners, L.P. ex rel. Bahar v. United States</u>, 84 Fed. Cl. 385, 389, <u>recons.</u> <u>denied</u>, 84 Fed. Cl. 378 (2008). Furthermore, when "Congress has not 'directly spoken to the precise question at issue,'" a court shall sustain the agency's approach "so long as it is 'based on a permissible construction of the statute.'" <u>Auer v.</u> <u>Robbins</u>, 519 U.S. 452, 457 (1997) (citing <u>Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council,</u> <u>Inc.</u>, 467 U.S. 837, 842–43 (1984)).

As quoted above, the statute at 26 U.S.C. § 6511(a) sets forth the general default limitations period for tax refund claims:

> Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

26 U.S.C. § 6511(a). The statute at 26 U.S.C. § 6511(d)(3), however, provides an exception to the default limitations period with respect to foreign tax credit-based refund claims:

> If the claim for credit or refund relates to an overpayment attributable to any taxes paid or accrued to any foreign country or to any possession of the United States for which credit is allowed against the tax imposed by subtitle A in accordance with the provisions of section 901 or the provisions of any treaty to which the United States is a party, in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be 10 years from the date prescribed by law for filing the return for the year in which such taxes were actually paid or accrued.

26 U.S.C. § 6511(d)(3)(A).

Defendant notes that although plaintiffs' complaint alleges that plaintiffs' entire tax refund claim is timely under the 10-year limitations period of 26 U.S.C. § 6511(d)(3), defendant argues that plaintiffs "only allege an entitlement to foreign tax credits in the amount of $37,110 [sic]," and that plaintiffs' "complaint makes no effort to explain the

16

timeliness of the balance of plaintiffs' refund claim under §6511(d)(3) [sic]." (alteration added). Defendant quotes 26 U.S.C. § 6511(d)(3) as providing that

> ["][i]f the claim for credit or refund relates to an overpayment *attributable to any taxes paid or accrued to any foreign country* . . . in lieu of the 3-year period of limitation prescribed in subsection [6511](a), the period shall be 10 years from the date prescribed by law for filing the return . . . ."

(emphasis and ellipses in original; first alteration added) (quoting 26 U.S.C. § 6511(d)(3)). Defendant argues, based on defendant's quotation of 26 U.S.C. § 6511(d)(3), that "this provision only extends the period of limitations to an 'overpayment attributable' to foreign taxes" and "does not expand the period of limitations for *all* refund claims provided that the taxpayer has at least a $1 foreign tax credit." (emphasis in original). According to defendant, "the ten-year period does not apply to overpayments of tax based on any other grounds" than on the grounds of foreign tax credits. Further, according to defendant, "'[s]tatutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government,'" and, therefore, "even if the Court were to find any ambiguity in [26 U.S.C.] § 6511(d)(3)(A), the Court should resolve it in the Government's favor." (alterations added) (quoting Badaracco v. Comm'r, 464 U.S. 386, 391 (1984) (quoting E.I. du Pont de Nemours & Co. v. Davis, 264 U.S. 456, 462 (1924)), and citing Russian Recovery Fund Ltd. v. United States, 851 F.3d 1253, 1260 (Fed. Cir. 2017)).

Defendant argues that, aside from the tax refund claim of $37,170.00 based on a foreign tax credit,

> the remainder of plaintiffs' claim ($159,520 of the total) is based on a claimed reduction in plaintiffs' income-tax liability from the amount assessed on a substitute return prepared by the IRS in 2010 (alleged to be $156,796) to the amount claimed on a Form 1040 filed by plaintiffs in 2008 ($85,049), plus associated "late filing and payment penalties and interest."

Defendant asserts that this alleged overpayment by plaintiffs "has nothing to do with foreign tax credits, putting it well outside the scope of § 6511(d)(3)(A)." Moreover, according to defendant, "Plaintiffs do not dispute that this second ground is unrelated to foreign tax credits; they argue that it does not matter."

At oral argument, defendant's counsel elaborated on the difference between 26 U.S.C. §§ 6511(a) and 6511(d)(3). According to defendant's counsel, "subsection (a), broadly, addresses the time period that a taxpayer has to file a refund claim," while subsection "(d)(3)(A) limits the time that a taxpayer has to file an administrative refund claim based on the foreign tax credit. [Subsection] (d)(3)(B) limits the amount of that refund claim based on the foreign tax credit." (alteration added). Defendant's counsel further explained at oral argument that subsection "(b)(2)(A) limits the amount of the refund [claimed under subsection (a)] to the amount paid in the three-year period before the return was filed," which, in this case, would be 2015. (alteration added).

Plaintiffs respond that "Section 6511(d)(3) provides that '[i]f the claim for credit or refund *relates to* an overpayment attributable to' foreign taxes, then the 10-year statute

of limitations applies," (emphasis and alteration in original) (quoting 26 U.S.C. § 6511(d)(3)), and that defendant "reads the phrase 'relates to' out of the statute, arguing instead that a claim must arise **solely from** an 'overpayment attributable' to foreign taxes to be covered by the provision." (emphasis in original). Plaintiffs further argue that "[a]lthough the statute does not define the phrase 'relates to,' the Supreme Court and other courts have interpreted that phrase broadly and have generally 'given [the phrase] its broad common-sense meaning.'" (first alteration added) (quoting Metro. Life Ins. Co. v. Mass., 471 U.S. 724, 739 (1985),[10] and citing Cathay Cap. Holdings II, LP v. Zheng, No. 3:20CV1365 (JBA), 2021 WL 3417956, at *3 (D. Conn. Aug. 5, 2021)). According to plaintiffs, "[t]he phrase 'relates to' means 'to have connection, relation, or reference.'" (alteration added) (quoting Tiensch v. Plus SMS Holdings Ltd., No. A-09-CA-334LY, 2009 WL 10669446, at *7 (W.D. Tex. June 25, 2009), report and recommendation adopted, No. A-09-CA-334LY, 2009 WL 10669495 (W.D. Tex. Nov. 2, 2009) (citing AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000))).

Plaintiffs further argue that "[u]nder the Internal Revenue Code, '[t]he term "overpayment" includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto.'"[11] (first alteration added) (quoting 26 U.S.C. § 6401(a)). Plaintiffs argue that defendant's argument "that the ten-year statute of limitations applies narrowly only to the amount of the claimed foreign tax credit—is hard to reconcile with the contradictory breadth of Section 6401." According to plaintiffs, "[c]ourts are to interpret statutory schemes harmoniously, such that one provision of the law does not contradict another." (alteration added) (citing Roberts v. Sea-Lands Servs., Inc., 566 U.S. 93, 100 (2012); Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000)).

Defendant argues that the one statute which plaintiffs rely on in support of their arguments, 26 U.S.C. § 6401(a), "fails to support plaintiffs' position here." Defendant

---

[10] The Supreme Court's decision in Metropolitan Life concerned section 514(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144(a), which, according to the Supreme Court, "contain[s] a broad pre-emption provision declaring that the statute shall 'supersede any and all State laws insofar as they may now or hereafter relate' to any employee benefit plan.'" Metro. Life Ins. Co. v. Mass., 471 U.S. at 732 (alteration added) (quoting 29 U.S.C. § 1144(a)). The Supreme Court explained that "[t]he phrase 'relate to' was given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" Id. at 739 (first alteration added) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983)). The Supreme Court's Metropolitan Life decision did not consider the meaning of "relates to" in the context of 26 U.S.C. § 6511(d)(3), or in any other provision of the Internal Revenue Code.

[11] The statute at 26 U.S.C. § 6401(a) provides: "The term 'overpayment' includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto." 26 U.S.C. § 6401(a).

argues that 26 U.S.C. § 6401(a) "has nothing whatsoever to do with the construction of § 6511(d)(3)(A)," because § 6401(a) "merely allows taxpayers to claim refunds of amounts 'assessed or collected' by the government after the assessment and collection statutes had lapsed."

The United States Supreme Court addressed the meaning of "attributable to," as used in the Internal Revenue Code at 26 U.S.C. § 6511(d)(3)(A), in the case of Braunstein v. Commissioner, 374 U.S. 65 (1963). The Supreme Court in Braunstein engaged in the following statutory interpretation:

> As to the language used, [26 U.S.C. §] 117(m)[12] defines a collapsible corporation as embracing one formed or availed of principally for the manufacture, construction, or production of property with a view to (1) the sale or exchange of stock prior to the realization by the corporation of a substantial part of the net income from the property and (2) the realization 'of gain attributable to such property.' The section is then expressly made inapplicable to gain realized during any year 'unless more than 70 per centum of such gain is attributable to the property so manufactured, constructed, or produced.' If used in their ordinary meaning, the word 'gain' in these contexts simply refers to the excess of proceeds over cost or basis, and the phrase 'attributable to' merely confines consideration to that gain caused or generated by the property in question.

Braunstein v. Comm'r, 374 U.S. at 70 (emphasis and alteration added). The Supreme Court further explained:

> If a corporation owns but one asset, and the shareholders sell their stock at a profit resulting from an increase in the value of the asset, they have 'gain attributable to' that asset in the natural meaning of the phrase regardless of their desire, or lack of desire, to avoid the bite of federal income taxes.

Id. Defendant cites the Supreme Court's decision in Braunstein v. Commissioner to argue that the Supreme Court "briefly addressed the meaning of 'attributable to' in a tax case regarding whether gain from the sale of stock, under specified circumstances, would be treated as ordinary income (and taxed at a higher rate) or as long-term capital gain (and taxed at a lower rate)." (citing Braunstein v. Comm'r, 374 U.S. at 68-70). According to defendant, "[t]he Court explained that the 'ordinary meaning' of 'the phrase "attributable to" merely confines consideration to that gain caused or generated by the property in question.'" (alteration added) (citing Braunstein v. Comm'r, 374 U.S. at 70).

The United States Court of Appeals for the Federal Circuit cited the Supreme Court's decision in Braunstein in its decision in Electrolux Holdings, Inc. v. United States,

---

[12] The statute considered by the Supreme Court in Braunstein, section 117(m) of the Internal Revenue Code of 1939, was recodified as 26 U.S.C. § 341 in the Internal Revenue Code of 1954, Pub. L. No. 83–591, § 341, 68A Stat. 1, 107, and then repealed in the Jobs and Growth Tax Relief Reconciliation Act of 2003, Pub. L. No. 108-27, § 302(e)(4)(A), 117 Stat. 752, 763.

491 F.3d 1327 (Fed. Cir. 2007). The Federal Circuit in Electrolux considered a different exception to the default limitation period in 26 U.S.C. § 6511(a) than the exception currently before the court, namely 26 U.S.C. § 6511(d)(2)(A), which provided, as quoted by the Federal Circuit,

> "[i]f the claim for . . . refund relates to an overpayment *attributable to* . . . a capital loss *carryback*, in lieu of the 3–year period of limitation prescribed in subsection (a), the period shall be that period which ends 3 years after the time prescribed by law for filing the return . . . for the taxable year of the . . . net capital loss which results in such carryback, or the period prescribed in subsection (c) in respect of such taxable year, whichever expires later."

Electrolux Holdings, Inc. v. United States, 491 F.3d at 1329-30 (emphasis, alteration, and ellipses in original) (quoting 26 U.S.C. § 6511(d)(2)(A)). The Federal Circuit explained:

> The relevant statutory language in this case is "attributable to . . . a capital loss carryback." The phrase "attributable to," though it appears in many provisions of the Internal Revenue Code, is not defined anywhere in the Code and has no special technical meaning under the tax laws. Stanford v. Comm'r, 152 F.3d 450, 458 (5th Cir. 1998) (citing Lawinger v. Comm'r, 103 T.C. 428, 435, 1994 WL 471849 (1994)). Courts in various tax cases have construed the phrase according to its plain meaning, which is understood to be "due to, caused by, or generated by." Id. at 459; Lawinger, 103 T.C. at 435 (collecting cases); see also Braunstein v. Comm'r, 374 U.S. 65, 70, 83 S. Ct. 1663, 10 L. Ed. 2d 757 (1963) (interpreting "attributable to" in the phrase "gain attributable to such property" as "merely confin[ing] consideration to that gain caused or generated by the property in question").

Electrolux Holdings, Inc. v. United States, 491 F.3d at 1330-31 (alteration and ellipsis in original). The Federal Circuit, therefore, applied this understanding of "attributable to" to the facts of the Electrolux case and determined:

> when the plain meaning of "attributable to" is applied to § 6511(d)(2)(A) in the context of this case, the special limitations period is available for the 1995 tax year only if the 1995 overpayment was "due to, caused by, or generated by" a *carryback* of the 1994 long-term capital loss. Under the carryback/carryover mechanism set forth in 26 U.S.C. § 1212(a), the direct cause of the 1995 overpayment, which led to Electrolux's refund claim for 1995, was the capital loss *carryover* to that year.

Electrolux Holdings, Inc. v. United States, 491 F.3d at 1331 (emphasis in original). The Federal Circuit concluded that "Electrolux's 1995 overpayment was not 'due to, caused by, or generated by' the carryback of the 1994 capital loss to 1993 and thus was not 'attributable to' a capital loss carryback." Id. at 1333. Therefore, the Federal Circuit affirmed the dismissal of Electrolux's tax refund claim "for failure to comply with the jurisdictional prerequisite of filing a timely refund claim." Id. at 1328.

Defendant argues that the Federal Circuit in Electrolux "considered the application of § 6511(d)(2)(A), which provides a special limitations period '[i]f the claim for credit or

refund relates to an overpayment attributable to a net operating loss carryback or a capital loss carryback.'" (alteration in Electrolux Holdings, Inc. v. United States) (quoting 26 U.S.C. § 6511(d)(2)(A)). Defendant further argues that "Electrolux accorded the phrase 'attributable to' 'its plain meaning, which is understood to be "due to, caused by, or generated by."'" (quoting Electrolux Holdings, Inc. v. United States, 491 F.3d at 1330-31 (quoting Stanford v. Comm'r, 152 F.3d at 459)). According to defendant, the Federal Circuit in Electrolux "reason[ed] that 'the direct cause of the 1995 overpayment, which led to Electrolux's refund claim for 1995, was the capital loss *carryover*,'" but that "[b]ecause § 6511(d)(2)(A) was limited to overpayments caused by carrybacks, the court concluded that the extended limitations period did not apply to carryforwards, and the 1995 refund thus claim was untimely." (emphasis in original; alterations added) (quoting Electrolux Holdings, Inc. v. United States, 491 F.3d at 1331, 1333).

Plaintiffs contest defendant's reliance on the Federal Circuit's decision in Electrolux Holdings, Inc. v. United States. According to plaintiffs, "Electrolux did not hold that a tax attribute must be the originating or immediate cause of an overpayment in order to trigger a special limitations period under § 6511." Plaintiffs argue that "Electrolux turned on the fact that there was *no chain of causation at all* between the capital loss carryback that trigger the special limitations period and the overpayment for the tax year at issue." (emphasis in original) (citing Electrolux Holdings, Inc. v. United States, 491 F.3d at 1332).

As described above, the case currently before the court concerns the meaning of "attributable to" in the context of 26 U.S.C. § 6511(d)(3)(A). Although the Federal Circuit's decision in Electrolux concerned a different statutory provision, 26 U.S.C. § 6511(d)(2)(A), the Electrolux decision explains that "attributable to" "appears in many provisions of the Internal Revenue Code, is not defined anywhere in the Code and has no special technical meaning under the tax laws," and, moreover, "[c]ourts in various tax cases have construed the phrase according to its plain meaning, which is understood to be 'due to, caused by, or generated by.'" Electrolux Holdings, Inc. v. United States, 491 F.3d at 1330-31 (alteration added) (citing Braunstein v. Comm'r, 374 U.S. at 70; Stanford v. Comm'r, 152 F.3d at 458-59; Lawinger v. Comm'r, 103 T.C. at 435). As explained above, courts interpreting statutes "'must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'" Schindler Elevator Corp. v. United States, 563 U.S. at 407 (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. at 175 (internal quotation marks omitted)). Nothing in the text of 26 U.S.C. § 6511(d)(3)(A) indicates that "attributable to" carries a different meaning in that provision than the same phrase did in 26 U.S.C. § 6511(d)(2)(A), as interpreted by the Federal Circuit in Electrolux. Furthermore, 26 U.S.C. §§ 6511(d)(2)(A) and 6511(d)(3)(A) are subparagraphs of the same paragraph in Section 6511, as both subparagraphs are located within paragraph (d), "**Special rules applicable to income taxes**." See 26 U.S.C. § 6511(d) (emphasis in original). Because the court "must consider the words 'in their context and with a view to their place in the overall statutory scheme,'" Obsidian Sols. Grp., LLC v. United States, 54 F.4th at 1374 (quoting King v. Burwell, 576 U.S. at 486), this court concludes that "attributable to" in 26 U.S.C. § 6511(d)(3)(A) carries the plain meaning of "due to, caused by, or generated by," just as the Federal Circuit concluded with respect to the same phrase in 26 U.S.C. § 6511(d)(2)(A). See Electrolux Holdings, Inc. v. United States, 491 F.3d at 1330-31.

Therefore, in order for a tax refund claim to come within the application of the 10-year limitations period of 26 U.S.C. § 6511(d)(3), the tax refund claim must be "due to, caused by, or generated by," or, in other words, "attributable to," "taxes paid or accrued to any foreign country," i.e., foreign tax credits. See 26 U.S.C. § 6511(d)(3)(A).

As recounted above, plaintiffs filed a Form 1040 on April 12, 2018 for tax year 2008, in which plaintiffs claimed a foreign tax credit of $37,170.00. The next year, on February 11, 2019, plaintiffs filed Form 1040X, claiming a total refund of $196,690.00, which included $37,170.00 in foreign tax credits, the same amount claimed by plaintiffs' Form 1040 for 2008 filed in 2018. Neither plaintiffs' amended complaint, nor any documents attached thereto, allege that any amount other than the $37,170.00 noted as a foreign tax credit was "due to, caused by, or generated by" a foreign tax credit, or otherwise, "taxes paid" to any foreign country. Accordingly, only the $37,170.00 noted on plaintiffs' tax return and amended tax return as foreign tax credits are "attributable to any taxes paid or accrued to any foreign country," 26 U.S.C. § 6511(d)(3)(A), and, therefore, the 10-year limitations period for claims only applies to the $37,170.00 claimed as a foreign tax credit by plaintiffs.

As a result, the balance of plaintiffs' tax refund claim, $159,520.00, is subject to the default limitations period imposed by 26 U.S.C. § 6511(a). Section 6511(a) required plaintiffs to file a claim for credit or refund "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid." 26 U.S.C. § 6511(a). Plaintiffs allege that a substitute income tax return was filed for plaintiffs by the IRS on August 16, 2010, for tax year 2008, and that on October 22, 2012, and January 4, 2013, plaintiffs paid $217,720.21 and $398.35, respectively. Plaintiffs did not request a refund from the IRS until February 11, 2019, when plaintiffs filed their Form 1040X, claiming a refund due of $196,690.00. According to the terms of 26 U.S.C. § 6511(a), plaintiffs were required to request a refund no later than two years after the payment of their taxes for tax year 2008, which was, at the latest, January 4, 2015, two years after the final payment was applied against plaintiffs' 2008 taxes, on January 4, 2013. Plaintiffs' Form 1040X, filed with the IRS on February 11, 2019, therefore, was more than four years late with respect to all tax refunds claimed, with the exception of the $37,170.00 claimed as a foreign tax credit. Accordingly, with respect to $159,520.00 of their claim, plaintiffs failed to fulfill the statutory requirements for asserting a tax refund claim.

Plaintiffs' other arguments to avoid the application of the default limitations period of 26 U.S.C. § 6511(a) to the non-foreign tax credit-based component of their tax refund claim are unavailing. With respect to plaintiffs' argument regarding the definition of "overpayment" in 26 U.S.C. § 6401(a), that definition simply provides that an "overpayment" can include portions of "the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto." 26 U.S.C. § 6401(a). As explained above, the "expiration of the period of limitation" with respect to plaintiffs' tax refund claim occurred on January 4, 2015, two years after plaintiffs paid the balance due on their 2008 taxes. No amount of the 2008 taxes were "assessed or collected" after the expiration of the period of limitations applicable to plaintiffs' tax refund claim. Therefore, 26 U.S.C. § 6401(a)'s definition of

"overpayment" has no impact on the application of the 26 U.S.C. § 6511(a) default limitations period to plaintiffs' tax refund claim.

Separately, plaintiffs cite to administrative materials issued by the IRS to support their interpretation of the language of 26 U.S.C. § 6511(d)(3). Plaintiffs argue that Revenue Ruling 71-533,[13] 1971-2 C.B. 413, which was later suspended by Revenue Ruling 2020-8, 2020 I.R.B. 775, "permitted the application of the ten-year statute even though the refund resulted from a net operating loss carryback as well as a foreign tax credit and where the carryback refund exceeded the foreign tax credit amount." According to plaintiffs, "[t]his construction supports Plaintiffs' position." (alteration added). Plaintiffs also cite to what they term the IRS "Chief Counsel Advisory 2020230006," 2020 WL 3027268.[14] Plaintiffs describe the Chief Counsel Advisory as having "considered at length whether an overpayment can be 'attributable to' a net operating loss carryback ('NOL') pursuant to § 6511(d)(2) even where the NOL was not the immediate or originating cause of the overpayment at issue." According to plaintiffs, the Chief Counsel Advisory "explained that there were three prevailing interpretations of the phrase 'attributable to,'" which are outlined below, and plaintiffs argue that the Chief Counsel Advisory "carefully analyzed the caselaw and legislative history pertaining to § 6511 and the parallel deficiency provisions of 26 U.S.C. § 6501,[[15]] and it ultimately rejected the narrow

---

[13] Revenue Ruling 71-533 states that

> where a carryback of foreign taxes arises as a result of a net operating loss carryback from a subsequent taxable year, as in the instant case, a claim for credit or refund on a resulting overpayment of taxes attributable to the foreign tax credit is subject to the ten-year statute of limitations provided by section 6511(d)(3)(A) of the Code.

Rev. Rul. 71-533, 1971-2 C.B. at 414.

[14] Both parties provide inconsistent titles and dates for the Chief Counsel Advisory. Plaintiffs call the document the "Chief Counsel Advisory 2020230006," and date the document to June 5, 2020. Defendant calls the document the "Chief Counsel Advice 2020-23006" and dates the document to March 6, 2020. Both parties provide the same Westlaw citation for the document, 2020 WL 3027268. The correct title of the document is "Chief Counsel Advisory 202023006," and the correct date it was issued is June 5, 2020. See Chief Counsel Advisory 202023006, 2020 WL 3027268.

[15] Plaintiffs do not clarify their reliance on 26 U.S.C. § 6501 in this case, except to note that the Chief Counsel Advisory

> considered the parallel provisions under 26 U.S.C. § 6501, citing First Chicago Corp. v. Commissioner, 742 F.2d 1102 (7th Cir. 1984), and noted that the Seventh Circuit held that because a deficiency could be traced to a carryback at issue, the deficiency was "attributable to" the carryback. It stated that the language in § 6501(h) used the "attributable to" language broadly and that this is a parallel provision to § 6511(d)(2).

construction of § 6511 for which the government advocates here." (footnote added). According to plaintiffs, the Chief Counsel Advisory adopted the meaning of "attributable to" in 26 U.S.C. § 6511(d)(3)(A) "that an overpayment can be 'attributable to' a tax attribute *other than the immediate or originating cause* of that attribute." (emphasis in original). Plaintiffs concede that the "Chief Counsel Advisory may not be binding," but argue that "it is nonetheless prudent for this Court to 'consider the consistency of an agency's views when . . . weigh[ing] the persuasiveness of any interpretation it proffers in court.'" (alteration and ellipsis in original) (quoting Bittner v. United States, 598 U.S. 85, 143 S. Ct. 713, 722 (2023)).

In a supplemental brief, plaintiffs argue that the United States Supreme Court's decision in Bittner v. United States, 143 S. Ct. 713, cited administrative materials from the IRS and the Department of the Treasury, including a proposed rulemaking, "an IRS Letter, an IRS 'Fact Sheet,' and instructions for a previous version of the FBAR [Report of Foreign Bank and Financial Accounts] form" under consideration in Bittner. (alteration added) (citing Bittner v. United States, 143 S. Ct. at 721-22). According to plaintiffs:

> Noting that an agency's informal guidance documents did not control its analysis, the Court stated that such documents "cannot displace our independent obligation to interpret the law. But this Court has long said that courts may consider the consistency of an agency's view when we weigh the persuasiveness of any interpretation it proffers in court."

(quoting Bittner v. United States, 143 S. Ct. at 722 (citing Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944))).

In its supplemental brief, defendant argues Bittner "is not relevant to any question before the Court." Defendant argues, with respect to the question of "*why* an individual IRS employee may have provisionally approved their [plaintiffs'] refund claim before the IRS later denied it," (emphasis in original; alteration added), that the Supreme Court in Bittner "stated that 'courts may consider the consistency of an agency's views when we weigh the persuasiveness of any interpretation it proffers in court.'" (quoting Bittner v. United States, 143 S. Ct. at 722 (citing Skidmore v. Swift & Co., 323 U.S. at 140)). Defendant argues that it "has cited no IRS guidance to which this Court should defer" and that "the issue before the Court is a de novo interpretation of § 6511 as applied to the facts alleged by plaintiffs." Moreover, according to defendant, "Bittner itself made this point, stating, '[d]oubtless, the government's guidance documents do not control our analysis and cannot displace our independent obligation to interpret the law.'" (alteration in original) (quoting Bittner v. United States, 143 S. Ct. at 722). Therefore, defendant

_____

Plaintiffs also reference 26 U.S.C. § 6501(c)(8), which addresses civil fraud penalties, and "provides that if an international information return is required and not filed, the statute of limitations remains open for the entire tax return, and not just the portion of the return dealing with the international item." Plaintiffs argue that "these other situations confirm that a statute of limitations may be open for an entire tax return based upon a limited triggering event when it is to the government's benefit."

contests plaintiffs' reliance on their cited IRS administrative materials. With respect to Revenue Ruling 71-533, 1971-2 C.B. 413, defendant noted, as indicated above, "that ruling was suspended by Revenue Ruling 2020-8, 2020 I.R.B. 775," and defendant argues that "even if it were still operative," Revenue Ruling 71-533 stated that the 26 U.S.C. § 6511(d)(3)(A) limitations period "'applies to claims for refund or credit of an overpayment resulting from a foreign tax credit carryback arising as a result of a net operating loss carryback,'" while the portions of plaintiffs' tax refund claim that defendant has moved to dismiss "are not connected to foreign taxes at all, let alone to a net operating loss carryback in a subsequent year." (quoting Rev. Rul. 71-533, 1971-2 C.B. at 413).

Defendant also contests plaintiffs' reliance on what defendant terms the IRS "Chief Counsel Advice 2020-23006," 2020 WL 3027268, which defendant argues "carries no weight and by statute may not be cited as authority." See 26 U.S.C. § 6110(k)(3) (2018) ("Unless the Secretary otherwise establishes by regulations, a written determination may not be used or cited as precedent.").[16] Further, defendant argues, in any event, the Chief Counsel Advisory demonstrates "that the ten-year limitations period in § 6511(d)(3)(A) will apply only if there is a causal link between a foreign tax credit and the taxpayer's refund claim." Defendant quotes three interpretations of "attributable to" in the Chief Counsel Advisory and which defendant argues all indicate "there must be a causal connection between a foreign tax credit and the taxpayer's refund claim:" (1) "'an overpayment is only "attributable to" the tax attribute immediately causing the overpayment;'" (2) "'an overpayment is "attributable to" any tax attribute to which the overpayment can be traced;'" and (3) "'the overpayment is only attributable to the tax attribute that originally started the chain of causation.'" (quoting Chief Counsel Advisory 202023006, 2020 WL 3027268, at *3). Defendant argues that "[a]ny of these three interpretations supports defendant's position here that, for § 6511(d)(3)(A) to apply, there must be a causal connection between a foreign tax credit and the taxpayer's refund claim," (alteration added), and further claims

> if the Court were to apply the CCA's non-authoritative reasoning here, plaintiffs would have to show that the entire refund claim results from a chain of causation involving foreign tax credits. Plaintiffs have made no effort to satisfy this requirement and instead claim they are entitled to the entire claimed refund without proving any causal connection to foreign tax credits.

The court finds that plaintiffs' reliance on the Revenue Ruling 71-533, 1971-2 C.B. 413, and the Chief Counsel Advisory 202023006, 2020 WL 3027268, is unavailing. The Federal Circuit has explained that "general counsel memoranda and revenue rulings merely represent the position of the United States and do not bind this court." Western Co. of N. Am. v. United States, 323 F.3d 1024, 1032 (Fed. Cir. 2003) (citing Vons Cos., Inc. v. United States, 51 Fed. Cl. 1, 8, 11, 12 (2001)). The Federal Circuit further explained that "this court may refer to general counsel memoranda and revenue rulings for guidance and accept that reasoning in whole or in part to assist its understanding of the language of the revenue code." Id.; see also USA Choice Internet Servs., LLC v. United States, 522

---

[16] Section 6110 of Title 26, "Public inspection of written determinations," provides "[t]he term 'written determination' means a ruling, determination letter, technical advice memorandum, or Chief Counsel advice." 26 U.S.C. § 6110(b)(1)(A) (alteration added).

F.3d 1332, 1342 (Fed. Cir. 2008). This court, therefore, is not required to defer to the interpretations expressed in Revenue Ruling 71-533 or Chief Counsel Advisory 202023006. Further, as plaintiffs concede, Revenue Ruling 71-533 was suspended in 2020 by Revenue Ruling 2020-8, 2020 I.R.B. 775, and is no longer operative. Moreover, as defendant correctly points out, the statute at 26 U.S.C. § 6110(k)(3) provides that "[u]nless the Secretary otherwise establishes by regulations, a written determination," such as Chief Counsel Advisories, "may not be used or cited as precedent." 26 U.S.C. § 6110(k)(3) (alteration added). Other Judges of the Court of Federal Claims have recognized that claimants may not solely rely upon IRS determinations, including Chief Counsel Advisories, as precedent. See, e.g., Mills v. United States, 154 Fed. Cl. 549, 556 (2021) (citing 26 U.S.C. § 6110(k)(3)); Principal Life Ins. Co. and Subsidiaries v. United States, 95 Fed. Cl. 786, 790 n.5 (2010) (citing 26 U.S.C. § 6110(k)(3)); Amergen Energy Co., LLC ex rel. Exelon Generation Co., LLC v. United States, 94 Fed. Cl. 413, 418 (2010). Furthermore, the court agrees with defendant that plaintiffs have not demonstrated a causal connection between the foreign tax credit and the plaintiffs' refund claim.

Additionally, as both parties acknowledge in their supplemental briefs, the Supreme Court in Bittner confirmed that the courts have an "independent obligation to interpret the law." See Bittner v. United States, 143 S. Ct. at 722. This court has exercised that independent obligation to interpret 26 U.S.C. §§ 6511(a) and 6511(d)(3) and determines that only the $37,170.00 claimed as a foreign tax credit is subject to the 10-year limitations period of 26 U.S.C. § 6511(d)(3). The remainder of plaintiffs' claim is subject to the default limitations period of 26 U.S.C. § 6511(a), and, because plaintiffs did not request a refund until February 11, 2019, more than four years after the limitations period had expired, plaintiffs have failed to meet the statutory requirements to bring $159,520.00 of their tax refund claim.

## Jurisdictional Requirements of 26 U.S.C. §§ 6511(a) and 6511(d)(3)

Having determined that $37,170.00 of plaintiffs' tax refund claim is subject to the 10-year limitations period of 26 U.S.C. § 6511(d)(3), and the balance of plaintiffs' claim is subject to the default limitations period under 26 U.S.C. § 6511(a), the court determines whether either limitations period is jurisdictional, such that failing to meet its requirements will result in dismissal for lack of subject matter jurisdiction. Defendant argues that the limitations periods established by 26 U.S.C. § 6511 are jurisdictional because they "limit" the "jurisdictional grant" of the Tucker Act, 28 U.S.C. § 1491(a)(1). (citing Albemarle Corp. & Subsidiaries v. United States, 118 Fed. Cl. 549, 558 (2014)).[17] According to defendant, under 26 U.S.C. § 6511(a),

---

[17] The undersigned issued the decision in Albemarle Corp. & Subsidiaries v. United States, 118 Fed. Cl. 549. The decision was subsequently affirmed by the United States Court of Appeals for the Federal Circuit. See Albemarle Corp. & Subsidiaries v. United States, 797 F.3d 1011 (Fed. Cir.), reh'g denied (Fed. Cir. 2015), cert. denied, 578 U.S. 922 (2016).

> [t]he refund claim "shall be filed by the taxpayer within 3 years from the time
> the return was filed or 2 years from the time the tax was paid, whichever of
> such periods expires the later." But "if no return was filed by the taxpayer,
> [a claim must be filed] within 2 years from the time the tax was paid.," [sic]

(second alteration in original) (quoting 26 U.S.C. § 6511(a), and citing Albemarle Corp. & Subsidiaries v. United States, 118 Fed. Cl. at 559). Based on the limitations period in 26 U.S.C. § 6511(a), defendant argues that plaintiffs' "complaint alleges that payments were applied to tax year 2008 in October 2012 and January 2013," such that "plaintiffs had two years to file a refund claim," and "the last possible date for plaintiffs to file a claim seeking a refund of those payments expired in January 2015."

Rather than directly respond to defendant's argument that $159,520.00 of plaintiffs' tax refund claim is outside this court's jurisdiction because plaintiffs filed their claim after the limitations period in 26 U.S.C. § 6511(a), plaintiffs confusingly argue that the foreign tax credit limitations period of 26 U.S.C. § 6511(d)(3) is not jurisdictional.[18] Plaintiffs assert that defendant's "argument is premised upon the notion that the limitations period set forth in 26 U.S.C. § 6511(d)(3) is jurisdictional," but that "the government assumes that § 6511(d)(3) is jurisdictional without providing any controlling support for that assertion." Plaintiffs argue that defendant's citation to Albemarle Corp. & Subsidiaries v. United States, 118 Fed. Cl. 549, is inappropriate, because Albemarle "provided by way of dicta that § 6511(d)(3) is jurisdictional," but, according to plaintiffs, "the antecedent question of whether § 6511(d)(3) is jurisdictional was not a contested issue in that case." (citing Albemarle Corp. & Subsidiaries v. United States, 118 Fed. Cl. at 560). Plaintiffs emphasize what they characterize as defendant's "failure to cite any cases in which a court carefully analyzed § 6511(d)(3) and then concluded that it is jurisdictional," and plaintiffs argue that, in this case, the court "should conclude that the limitations period in § 6511(d)(3) is not a jurisdictional prerequisite to suit."

The United States Supreme Court explained in United States v. Dalm, 494 U.S. 596, that "unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been 'erroneously,' 'illegally,' or 'wrongfully collected,' §§ 1346(a)(1), 7422(a), may not be maintained in any court." United States v. Dalm, 494 U.S. at 602 (citing United States v. Kales, 314 U.S. 186, 193 (1941)). According to the Supreme Court in Dalm, because the claimant "failed to comply with these statutory requirements," the limitations period, "[u]nder the plain language of §§ 6511(a) and 7422(a), the District Court was barred from entertaining her suit for a refund of the tax." United States v. Dalm, 494 U.S. at 602 (alteration added). The Supreme Court explained that "[u]nder settled principles of sovereign immunity, 'the United States, as sovereign, "is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."'" Id. at 608 (ellipsis in original; alteration added) (quoting United States v. Testan, 424 U.S. 392, 399 (1976) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941))). The Supreme Court further explained that "[a]

---

[18] Despite plaintiffs' confusing argument, the court reviews the limitations periods in both 26 U.S.C. §§ 6511(a) and 6511(d)(3) to determine if they constitute jurisdictional prerequisites.

statute of limitations requiring that a suit against the Government be brought within a certain time period is one of those terms." Id. (alteration added) (citing United States v. Mottaz, 476 U.S. 834, 941 (1986); Block v. North Dakota, ex rel. Bd. of Univ. & School Lands, 461 U.S. at 287). Moreover, according to the Supreme Court in Dalm: "'[A]lthough we should not construe such a time-bar provision unduly restrictively, we must be careful not to interpret it in a manner that would "extend the waiver beyond that which Congress intended."'" Id. (alteration in original) (quoting Block v. North Dakota, ex rel. Bd. of Univ. & School Lands, 461 U.S. at 287 (quoting United States v. Kubrick, 444 U.S. 111, 117-18 (1979)), and citing Library of Congress v. Shaw, 478 U.S. 310, 318 (1986); United States v. King, 395 U.S. 1, 4 (1969)).

After Dalm, the Supreme Court decided Arbaugh v. Y&H Corp., 546 U.S. 500, which concerned the definition of "employer" under Title VII of the Civil Rights Act of 1964, which limited "employers" to only those with fifteen employees or more. See Arbaugh v. Y&H Corp., 546 U.S. at 503 (citing 42 U.S.C. § 2000e(b)). While the United States District Court for the Eastern District of Louisiana had held, and the United States Court of Appeals for the Fifth Circuit affirmed, that the "numerical qualification" was a jurisdictional requirement, the Supreme Court reversed. See id. at 504. The Supreme Court held that the standard for whether a statutory requirement is jurisdictional is "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional . . . ." Id. at 515 (alteration and ellipsis added). The Supreme Court applied this "clear statement" rule to Title VII's 15-employee minimum and found "that the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." Id. at 516.

Plaintiffs quote the United States Supreme Court's decision in Arbaugh v. Y&H Corp., 546 U.S. 500, to argue that "[t]he Supreme Court has established a bright-light rule for determining whether a statutory provision is jurisdictional," namely: "If Congress 'clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue.'" (alteration added) (quoting Arbaugh v. Y&H Corp., 546 U.S. at 515-16). Moreover, according to plaintiffs, "[i]f Congress has not spoken clearly, the court should presume that the statutory provision is merely a claims-processing rule that is not 'given the jurisdictional brand.'" (alteration added) (quoting Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 435 (2011)). Plaintiffs argue that "Congress has not 'clearly state[d]' an intention that § 6511(d)(3) be treated as jurisdictional," (alteration in original) (quoting Arbaugh v. United States, 546 U.S. at 515), and that 26 U.S.C. § 6511(d)(3) "'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the [court].'" (alterations in original) (quoting Henderson ex rel. Henderson v. Shinseki, 562 U.S. at 438).

Regarding the statutes at issue in the above captioned case, plaintiffs argue that, while 26 U.S.C. § 6511(d)(3) "is cast in mandatory terms (i.e. 'the period shall be 10 years'), such language is not sufficient to trigger jurisdictional consequences. The Supreme Court has specifically 'rejected the notion that "all mandatory prescriptions, however emphatic, are . . . properly typed jurisdictional."'" ellipsis in original) (quoting Henderson ex rel. Henderson v. Shinseki, 562 U.S. at 439 (citation omitted)). Plaintiffs further argue that "in Henderson, the Supreme Court found a statute providing that an

aggrieved claimant 'shall' file a notice of appeal with the Court of Appeals for Veterans Claims within 120 days of an adverse decision '[i]n order to obtain review' was not jurisdictional." (alteration in original) (quoting <u>Henderson ex rel. Henderson v. Shinseki</u>, 562 U.S. at 438-39). Plaintiffs also argue that two other Supreme Court cases indicate that mandatory language is not jurisdictional. In <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385 (1982), plaintiffs argue that the Supreme Court held a "statute providing that an individual 'shall' file a charge with the Equal Employment Opportunity Commission before filing suit in federal court not jurisdictional." (citing <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. at 394-95). In <u>Boechler, P.C. v. Commissioner</u>, 142 S. Ct. 1493, plaintiffs argue that the Supreme Court held a "statue providing that an individual 'may' petition the Tax Court for review within 30 days of an adverse decision and 'the Tax Court shall have jurisdiction with respect to such matter' not jurisdictional." (citing <u>Boechler, P.C. v. Comm'r</u>, 142 S. Ct. at 1497). According to plaintiffs, "[t]here is nothing in § 6511(d)(3)(A)'s language or structure to indicate a clear intention that it be jurisdictional."[19] (alteration added).

Plaintiffs also cite to the decision of another Judge of the United States Court of Federal Claims, decided after the Supreme Court's <u>Arbaugh</u> decision, <u>Murdock v. United States</u>, 103 Fed. Cl. 389 (2012), as an example of a case in which "courts disagreed on whether to treat motions to dismiss tax refund suits under § 6511 as bearing on subject-matter jurisdiction." (citing <u>Murdock v. United States</u>, 103 Fed. Cl. at 393). <u>Murdock</u> concerned the appointed trustee of a decedent who filed tax returns on behalf of the decedent, reflecting tax returns the decedent had failed to make while alive, and the trustee claimed refunds on certain of the tax returns. <u>See</u> <u>generally</u> <u>Murdock v. United States</u>, 103 Fed. Cl. at 390-94. The government moved to dismiss the tax refund claim under both RCFC 12(b)(1) and RCFC 12(b)(6), based on 26 U.S.C. § 6511(b)(2), which places limits on the amount that can be recovered in a credit or refund. <u>See</u> <u>Murdock v. United States</u>, 103 Fed. Cl.at 391; <u>see also</u> 26 U.S.C. § 6511(b)(2). With respect to the distinction between motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim, the Judge in <u>Murdock</u> stated that "[t]he Supreme Court and the Federal Circuit have not squarely addressed this issue as it pertains to I.R.C. § 6511(b)(2)," and the Judge in <u>Murdock</u> observed that "[t]he Supreme Court has twice dismissed suits under Section 6511 for lack of subject matter jurisdiction, but it did so in both instances in light of the provisions of Subsection 6511(a)," and "[i]n each case, the taxpayer had filed a claim more than three years after filing a return or more than two years after submitting a payment." <u>Murdock v. United States</u>, 103 Fed. Cl. at 392 (alterations added) (citing <u>United States v. Brockamp</u>, 519 U.S. 347, 348-49 (1997); <u>United States v. Dalm</u>, 494 U.S. at

---

[19] Plaintiffs argue, confusingly, that "the government has raised the statute of limitations as a potential affirmative defense to part of Plaintiffs' claim," (citing RCFC 8(c)(1)), and that defendant "should have raised that defense through a motion for failure to state a claim under RCFC 12(b)(6), where the Court could have considered the motion under the proper standard." Plaintiffs further argue, also confusingly, that defendant's "motion is more in the nature of a partial summary judgment motion that should be filed after discovery is completed." In their supplemental brief, plaintiffs argue again that "[h]aving elected to only move to dismiss the complaint for lack of subject-matter jurisdiction, the government may not now seek to dismiss the complaint for failure to state a claim." (alteration added).

602; United States v. Clintwood Elkhorn Min. Co., 553 U.S. at 8-9, 14). The Judge in Murdock held that the proper vehicle to evaluate an argument under 26 U.S.C. § 6511(b)(2) was a motion to dismiss for failure to state a claim because section 6511(b)(2) is "[a] statute capping a plaintiff's recovery," and even if a plaintiff's recovery were capped "at zero dollars," section 6511(b)(2) would "not strip a court of otherwise proper jurisdiction." Murdock v. United States, 103 Fed. Cl. at 393 (alteration added). Moreover, the Murdock Judge observed with respect to 26 U.S.C. § 6511, "the statute's text distinguishes between jurisdictional filing requirements and substantive limitations on recovery." Murdock v. United States, 103 Fed. Cl. at 393. According to the Judge in Murdock, 26 U.S.C. § 6511(b)(2) "constrains the tax that is recoverable, Baral[ v. United States], 528 US. [431,] 432, 120 S. Ct. 1006 [(2000)], but does not have the effect of a traditional jurisdictional bar." Murdock v. United States, 103 Fed. Cl. at 393 (alterations added). Accordingly, the Judge in Murdock treated the motion to dismiss based on 26 U.S.C. § 6511(b)(2) as a motion pursuant to RCFC 12(b)(6). See Murdock v. United States, 103 Fed. Cl. at 394. In the above captioned case, defendant argues that Murdock only "held that § 6511(b)(2) did 'not have the effect of a jurisdictional bar,' because its 'limit on the amount of a credit or refund' merely 'constrains the tax that is recoverable,'" and that Murdock "did not address the statute of limitations in § 6511(a) that is applicable here." (quoting Murdock v. United States, 103 Fed. Cl. at 393-94).[20]

In 2020, the United States Court of Appeals for the Federal Circuit issued its decision in Walby v. United States, 957 F.3d 1295, an appeal from a dismissal which was, in part, for lack of subject matter jurisdiction because the claimant had not filed an administrative refund claim within two years of the taxes having been paid. See id. at 1298. The Federal Circuit stated in Walby that the claimant had waived her arguments with respect to the timeliness of her claim by not challenging that holding on appeal. See id. at 1299. The Federal Circuit further stated, however:

> There is one aspect of the court's conclusion regarding this claim, however,
> that warrants additional examination. The Claims Court concluded that,

---

[20] Defendant also cited to the Murdock decision, but to argue that if the court determined that the limitations period of 26 U.S.C. § 6511(d)(3) were not jurisdictional, the court should still dismiss $159,520.00 of plaintiffs' tax refund claim for failure to state a claim under RCFC 12(b)(6). Defendant argues that "over five years passed between plaintiffs' recent payment (2012) and the filing of plaintiffs' tax return (2018)," and that "[o]ver six years passed between plaintiffs' most recent payment (2012) and the filing of their refund claim (2019)." (alteration added). Defendant also argues that "Plaintiffs' 2008 tax return was filed in April 2018" but that "Plaintiffs made no payments during the three-year period preceding the filing of the return." Moreover, defendant argues that "Plaintiffs filed their refund claim in February 2019" but that "no payments were made during the two-year look-back period," which would have looked back to 2017. Therefore, according to defendant, "[u]nder either look-back period of § 6511(b), the maximum amount of any refund is zero." (alteration added). As a result, defendant argues, plaintiffs can only state a claim with respect to the $37,170.00 "attributable to" foreign taxes under 26 U.S.C. § 6511(d)(3) because, as explained above, only foreign tax credit refund claims are afforded a 10-year limitations period.

because Walby's 2014 administrative refund claim was untimely, pursuant to 26 U.S.C. § 7422(a), it lacked subject matter jurisdiction over that claim. Although this conclusion is correct under our existing case law, see, e.g., Stephens v. United States, 884 F.3d 1151, 1156 (Fed. Cir. 2018), it may be time to reexamine that case law in light of the Supreme Court's clarification that so-called "statutory standing" defects—i.e., whether a party can sue under a given statute—do not implicate a court's subject matter jurisdiction. Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 n.4, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014); see also Lone Star Silicon Innovations LLC v. Nanya Tech. Corp., 925 F.3d 1225, 1235 (Fed. Cir. 2019) (recognizing that, following Lexmark, it is incorrect to classify "so-called" statutory-standing defects as jurisdictional).

Walby v. United States, 957 F.3d at 1299. The Federal Circuit explained that

Walby's failure to meet the § 7422(a) statutory requirement of a timely administrative claim for her 2014 tax claim would not seem to implicate the Claims Court's subject matter jurisdiction; rather, it appears to be a simple failure to meet the statutory precondition to maintain a suit against the government with respect to those taxes.

Walby v. United States, 957 F.3d at 1299-1300. The Federal Circuit further explained:

The Supreme Court has not addressed § 7422(a) following Lexmark. We note, however, that the Court's most recent discussion of § 7422(a) does not describe it as "jurisdictional." See Clintwood Elkhorn Mining Co., 553 U.S. 1 at 4-5, 11-12, 128 S. Ct. 1511, 170 L. Ed. 2d 392. And, although our court has continued to refer to this statute as jurisdictional following Lexmark, we have not yet addressed the implications of that case and the many Supreme Court cases applying it.

In view of the Supreme Court's guidance in Lexmark, it may be improper to continue to refer to the administrative exhaustion requirements of § 7422(a) and § 6511 as "jurisdictional pre-requisites." That these provisions concern the United States' consent to be sued would not seem to change this conclusion. The Supreme Court has "made plain that most time bars are nonjurisdictional."

Walby v. United States, 957 F.3d at 1300 (footnote omitted) (quoting United States v. Kwai Fun Wong, 575 U.S. at 410). According to the Federal Circuit, the Supreme Court in Kwai Fun Wong "distinguished jurisdictional statutes from 'quintessential claim-processing rules which seek to promote the orderly progress of litigation, but do not deprive a court of authority to hear a case," and the Supreme Court "did not except statutes that implicate the government's waiver of sovereign immunity from that distinction." Id. (quoting United States v. Kwai Fun Wong, 575 U.S. at 410). The Federal Circuit further explained, referring to the "clear statement" rule from Arbaugh v. Y&H Corp., 546 U.S. at 515-16, that the "'clear statement' rule 'does not mean Congress must incant magic words,'" but rather that "'traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences.'"

Walby v. United States, 957 F.3d at 1300 (quoting United States v. Kwai Fun Wong, 575 U.S. at 410 (internal quotations omitted)). Applying the clear statement rule, the Federal Circuit concluded that "[t]here is no such clear statement apparent in the statutes at issue here, 28 U.S.C. § 7422(a) and § 6511(a)." Walby v. United States, 957 F.3d at 1300 (alteration added). Therefore, the Federal Circuit indicated that "although the Claims Court properly dismissed Walby's 2014 refund claim because she did not meet the prerequisite for bringing such a claim, we think that, under Lexmark, Arbaugh, and their progeny, the court likely did not lack subject matter jurisdiction over this claim." See Walby v. United States, 957 F.3d at 1301.

Plaintiffs argue that the Federal Circuit's decision in Walby v. United States, 957 F.3d 1295,

> recognized that "it may be improper to continue to refer to the administrative exhaustion requirements of [26 U.S.C.] § 7422(a) and § 6511 as 'jurisdictional pre-requisites'" in light of the Supreme Court's guidance in Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 n.4 (2014), that "so-called 'statutory standing defects'—i.e., whether a party can sue under a given statute—do not implicate a court's subject matter jurisdiction."

(alteration added) (quoting Walby v. United States, 957 F.3d at 1299-1300). Defendant argues that the Federal Circuit in Walby

> suggested in dictum that "it may be improper to continue to refer to the administrative exhaustion requirements of § 7422(a) and § 6511 as jurisdictional," but acknowledged that the decision of the Court of Federal Claims that it "lacked subject matter jurisdiction" was "correct" under "existing" Federal Circuit case law, which it did not then overrule.

(quoting Walby v. United States, 957 F.3d at 1299).

After Walby was decided by the Federal Circuit, another Judge of the United States Court of Federal Claims issued a decision in Koopmann v. United States, 150 Fed. Cl. 290 (2020), aff'd, No. 2021-1329, 2022 WL 1073340 (Fed. Cir. Apr. 11, 2022). The Koopmann decision concerned the statute of limitations imposed by 26 U.S.C. § 6511(a), and cited the Walby decision to hold that the statute of limitations "reflects Congress' decision to waive sovereign immunity only if suit is brought within a specific time period." Koopmann v. United States, 150 Fed. Cl. at 297 (citing Walby v. United States, 957 F.3d at 1299-1301). The Judge in Koopmann held that, under the 26 U.S.C. § 6511(a) statute of limitations, the Koopmann plaintiff's claim had been untimely, and the Judge ultimately dismissed the claim for lack of subject matter jurisdiction. Koopmann v. United States, 150 Fed. Cl. at 299.

After Walby and Koopmann, the Federal Circuit decided another case, this time concerning whether the requirements of 26 U.S.C. § 7422(a) are jurisdictional. See Brown v. United States, 22 F.4th 1008. The government in Brown moved to dismiss for lack of jurisdiction the claimants' complaint for a tax refund under the Foreign Earned Income Exclusion, on the basis that the claimants "had not 'duly filed' their administrative refund

claims in accordance with 26 U.S.C. § 7422(a)'s mandate because they had not personally signed and verified their amended returns or properly authorized an agent to execute their returns." Brown v. United States, 22 F.4th at 1010. The Federal Circuit in Brown acknowledged that "[t]he Supreme Court has interpreted the filing requirement in § 7422(a) as a jurisdictional limitation in Dalm," but, according to the Federal Circuit, "the adequacy of the filing, at issue here, is different from the fact of filing," and in Dalm, the Supreme Court "did not rule that meeting the requirement of being 'duly filed' was jurisdictional." Brown v. United States, 22 F.4th at 1011 (alteration added) (citing United States v. Dalm, 494 U.S. at 609-10). The Federal Circuit further acknowledged that "this court has held that a taxpayer's failure to comply with other § 7422(a) requirements (including those implemented by regulation) generally is jurisdictional." Brown v. United States, 22 F.4th at 1011 (citing Stephens v. United States, 884 F.3d at 1156; Waltner v. United States, 679 F.3d at 1333). The Federal Circuit explained, however, "that jurisdictional characterization cannot be reconciled with the Supreme Court's decision in Lexmark International, Inc. v. Static Control Components, Inc., where the Court clarified that so-called 'statutory standing' defects—i.e., whether a party can sue under a given statute—do not implicate a court's subject matter jurisdiction." Brown v. United States, 22 F.4th at 1011 (citing Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. at 128 and n.4). The Federal Circuit in Brown "conclude[d] that the 'duly filed' requirement in § 7422(a) is more akin to a claims-processing rule than a jurisdictional requirement." Brown v. United States, 22 F.4th at 1012 (alteration added) (citing Gillespie v. United States, 670 F. App'x 393, 395 (7th Cir. 2016)).

Plaintiffs argue that, in Brown, "the Federal Circuit held that the tax refund statute, 26 U.S.C. § 7422(a), is not jurisdictional." Defendant argues that Brown, "held only that certain aspects of § 7422(a) were non-jurisdictional but did not address any provisions in § 6511." (citing Brown v. United States, 22 F.4th at 1012). Further, according to defendant,

> Brown held only that a taxpayer's failure to file an adequate administrative claim did not deprive the Court of jurisdiction but did not disturb the Supreme Court's holding in Dalm v. United States, 494 U.S. 596, 608-610 (1990), that "a court lacks subject-matter jurisdiction over a plaintiff's claim for tax refund when the plaintiff has not filed a return."

The Federal Circuit recently issued a decision in Dixon v. United States, 67 F.4th 1156, in which the Federal Circuit compared the Supreme Court's Dalm decision and the Federal Circuit's Brown decision:

> The Supreme Court has ruled that failure to file with the IRS within the prescribed time deprives the court of "jurisdiction over [the] suit for refund." United States v. Dalm, 494 U.S. 596, 608–10, 110 S. Ct. 1361, 108 L. Ed. 2d 548 (1990). This court in Brown ruled that Dalm's jurisdictional characterization applies to "the fact of filing" in the time allowed, but not to § 7422(a)'s "duly filed" requirements governing "the adequacy of the filing" if timely made, and held the latter not to be jurisdictional in nature. Brown, 22 F.4th at 1011–12.

Dixon v. United States, 67 F.4th at 1161 (alteration in original).

The Federal Circuit's decision in Dixon appears to have reconciled the Dalm line of cases, holding that statutes of limitations are jurisdictional in the context of the Internal Revenue Code, with the Arbaugh line of cases, which require a "clear statement" that statutory requirement is jurisdictional. See Arbaugh v. Y&H Corp., 546 U.S. at 515-16. As indicated above, both limitations periods, 26 U.S.C. §§ 6511(a) and 6511(d)(3), at issue in the above captioned case are imposed with mandatory language. The statute at 26 U.S.C. § 6511(a) states that "[c]laim for credit or refund of an overpayment of any tax imposed by this title . . . shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid . . . ." 26 U.S.C. § 6511(a) (emphasis, alteration, and ellipses added). The statute at 26 U.S.C. § 6511(d)(3)(A) directly references the limitations period in section 6511(a), and provides that "in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be 10 years from the date prescribed by law for filing the return for the year in which such taxes were actually paid or accrued." 26 U.S.C. § 6511(d)(3)(A) (emphasis added). Further, both 26 U.S.C. §§ 6511(a) and 6511(d)(3) specifically relate to the statute at 26 U.S.C. § 7422(a), which states:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax . . . or of any penalty . . . or of any sum . . . until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a) (emphasis and ellipses added). The relationship between these statutes was confirmed by the Supreme Court in United States v. Dalm which held that "unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been 'erroneously,' 'illegally,' or 'wrongfully collected,' §§ 1346(a)(1), 7422(a), may not be maintained in any court." United States v. Dalm, 494 U.S. at 602 (citing United States v. Kales, 314 U.S. at 193). As the Supreme Court in Dalm also explained, "'the United States, as sovereign, is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" Id. at 608 (ellipsis in original) (quoting United States v. Testan, 424 U.S. at 399 (internal quotations omitted)). Moreover, "[a] statute of limitations requiring that a suit against the Government be brought within a certain time period is one of those terms." Id. (alteration added) (citing United States v. Mottaz, 476 U.S. at 841; Block v. North Dakota ex rel. Bd. of Univ. & School Lands, 461 U.S. at 287).

The Federal Circuit's decision in Walby appeared to abandon the jurisdictional aspect of the 26 U.S.C. §§ 6511(a) and 6511(d)(3) statutes of limitations, as the Walby decision stated that 26 U.S.C. §§ 7422(a) and 6511 "concern the United States' consent to be sued," but also that "'most time bars are nonjurisdictional.'" Walby v. United States, 957 F.3d at 1300 (quoting United States v. Kwai Fun Wong, 575 U.S. at 410). Ultimately, however, as the Federal Circuit acknowledged, the claimant in Walby had waived her challenge to the Court of Federal Claims' timeliness ruling, see id. at 1299 (discussing Walby's waiver), and the Federal Circuit's discussion of timeliness, rather than stating a holding, noted, "we think that, under Lexmark, Arbaugh, and their progeny, the court likely did not lack subject matter jurisdiction over this claim." Walby v. United States, 957 F.3d

at 1301. Indeed, as discussed above, in the <u>Koopmann</u> decision, the Judge of the Court of Federal Claims cited <u>Walby</u> in support of the <u>Koopmann</u> Judge's dismissal of a claim for lack of subject matter jurisdiction for failure to file within the limitations period of 26 U.S.C. § 6511(a). <u>See</u> <u>Koopmann v. United States</u>, 150 Fed. Cl. at 297.

After <u>Walby</u>, the Federal Circuit's decision in <u>Brown</u> acknowledged that, under <u>Dalm</u>, "filing for a tax refund within the time limits of the statute of limitations was jurisdictional," although <u>Brown</u> reached a different holding with respect to "the adequacy of the filing" under 26 U.S.C. § 7422(a). <u>See</u> <u>Brown v. United States</u>, 22 F.4th at 1011 (citing <u>United States v. Dalm</u>, 494 U.S. at 609-10). The Federal Circuit's decision in <u>Dixon</u>, as explained above, confirmed the jurisdictional nature of the limitations period for tax refund claims: "The Supreme Court has ruled that failure to file with the IRS within the prescribed time deprives the court of 'jurisdiction over [the] suit for refund.'" <u>Dixon v. United States</u>, 67 F.4th at 1161 (alteration in original) (quoting <u>United States v. Dalm</u>, 494 U.S. at 608-10).

Based on the foregoing precedent of the United States Supreme Court and the United States Court of Appeals for the Federal Circuit, both limitations periods under consideration, 26 U.S.C. §§ 6511(a) and 6511(d)(3), are jurisdictional. As the Supreme Court has explained, filing a claim within the statutorily-mandated limitations period is a condition of the waiver of the sovereign immunity of the United States, and failure timely to file deprives the court of jurisdiction over the claim. <u>See</u> <u>United States v. Dalm</u>, 494 U.S. at 608-10. Because plaintiffs filed their claim for a refund outside the two-year limitations period applicable to them under 26 U.S.C. § 6511(a), plaintiffs' claim for $159,520.00, out of their total claim of $196,690.00, is outside the jurisdiction of this court by reason of untimely filing. The only exception, as both parties before the court recognize, is plaintiffs' claim for $37,170.00, attributable to foreign tax credits and, thereby, subject to the 10-year limitations period under 26 U.S.C. § 6511(d)(3). Therefore, the court dismisses $159,520.00 of plaintiffs' claimed tax refund for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1).

## CONCLUSION

Defendant's partial motion to dismiss is **GRANTED** and that portion of plaintiffs' complaint is **DISMISSED** which claims $159,520.00 of their total $196,690.00 claimed refund for the 2008 tax period. Further proceedings with respect to the balance of plaintiffs' claims, $37,170.00, will be scheduled in a separate Order.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**